EAGLE PROPERTIES, LTD., et al., Appellants,

v.

Clarence SCHARBAUER, Jr., et al., Appellees.

No. 08–88–00033–CV.

Court of Appeals of Texas, El Paso.

Sept. 21, 1988.

Rehearing Denied Nov. 9, 1988.

Clinard J. Hanby, Richard Haynes, Haynes & Fullenweider, Houston, Bill G. Alexander, Law Offices of Bill Alexander, Odessa, W. James Kronzer, Mary L. Jensen, Law Office of W. James Kronzer, Houston, Robert A. Rapp, McCamish, Ingram, Martin & Brown, San Antonio, Bruce Stephen Powers, Texas Commerce Tower, Houston, for appellants.

David C. Holmes, David T. Hedges, Vinson & Elkins, Houston, Bruce A. Budner, Johnson & Budner, Michael V. Powell, Locke, Purnell, Rain & Harrell, Dallas, Jess H. Hall, Jr., James W. Paulsen, Liddell, Sapp & Zivley, Houston, Robert J. Kheel, Willkie, Farr & Gallagher, New York City, James P. Boldrick, Boldrick & Clifton, Thomas C. Brown, William B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, John E. O'Neill, Elaine A. Lisko, Porter & Clements, Houston, Ernest E. Figari, Jr., Donald Colleluori, Figari & Davenport, Dallas, D. Thomas Johnson, McWhorter, Cobb & Johnson, Lubbock, Richard I. Miller, Peat, Marwick, Main & Co., New York City, Richard P. McKeel, Todd, Barron, Bridges & McKeel, Odessa, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

Eagle Properties, Ltd., and its two general partners appeal from the granting of a summary judgment in favor of Appellees. We affirm the judgment for Appellees.

We shall in this opinion refer to certain persons, parties, entities and statutes by those names shown in parentheses even though certain entities may have changed names or ownership since judgment was entered: Eagle Properties, Ltd. (Eagle);

Thomas C. Brown (Brown); M.W. Branum (Branum); InterFirst Bank Dallas (Inter-First); Texas Commerce Bank (TCB); Main Hurdman (Main Hurdman); First National Bank of Midland (FNBM); Federal Deposit Insurance Corporation (FDIC); Deceptive Trade Practice Act (DTPA).

This case is one of many that has arisen from the collapse of the oil and gas industry in the Permian Basin area of West Texas, which has resulted in the closure of many substantial banking institutions. The First National Bank of Midland (FNBM) was one of the oldest and most respected banks in the West Texas area, whose bank directors were men of proven business ability and long respected in the community.

In 1982, the FNBM became aware that there were loans in the millions of dollars that would have to be charged off, and decided to improve its financial position by the sale and leaseback of its twenty-four story bank building, its ten story parking garage and its drive-in facilities. The sale and leaseback of these facilities took place within a matter of weeks during December of 1982. Appellee, Charles Fraser, was president of FNBM and handled the negotiations for the sale/leaseback of the bank properties. Appellants, Brown and Branum, were long standing stockholders and customers of FNBM who became general partners of Eagle, which was formed in December 1982 to complete purchase of the FNBM properties. This limited partnership was composed of prominent, respected and successful businessmen in the Permian Basin area.

The agreed sales price was $75 million and there was to be an appraisal of the properties to be made by March 31, 1983. If the appraisal came in at more than $75 million, the sales price was to be adjusted upward, but if the appraisal was less than $75 million, the sales price would remain unchanged. The leaseback was for a three year term. The sale was completed December 31, 1982, when $25 million in notes from the Appellants Eagle partners were

assigned to FNBM. The remaining $50 million was represented by two $25 million of unfunded letters of credit from TCB and InterFirst. These unfunded letters of credit were funded in June 1983, which was six months before they were scheduled to be funded.

The collapse of the FNBM occurred on October 14, 1983, when the acting comptroller of the currency declared the bank insolvent and appointed the FDIC as receiver of FNBM. On the same date, the FDIC, as receiver, conveyed certain property of FNBM, including the Eagle notes in the amount of $25 million to the FDIC in its corporate capacity. After FDIC accelerated the notes, they remained unpaid. Suit was filed in federal court against Eagle and its general and limited partners to collect the $25 million in notes given for the purchase of the FNBM properties. Trial on the merits resulted in judgment for FDIC. *FDIC v. Eagle Properties, Ltd.,* 664 F.Supp. 1027 (W.D.Tex.1985). While on appeal, but before decision in the Fifth Circuit, the case was settled. The settlement agreement did not provide for the vacating of the Federal District Court judgment, which contained crucial findings which are determinative of the case before us.

In the FDIC suit in federal court, Eagle and its partners counterclaimed against the FDIC, alleging that the FNBM, its officers and directors had fraudulently induced them to enter into the sale/leaseback transaction and to fund the letters of credit. This counterclaim also sought damages as well as equitable and declaratory relief.

Two suits were filed in the State District Court of Midland, County:

(1) In No. A–35,264 (Branum suit) it was claimed that FNBM, its former directors, TCB, InterFirst and Main Hurdman (FNBM's former accounting firm) conspired to defraud Eagle partners by inducing them to enter into the early funding of letters of credit. The suit also alleged that TCB, InterFirst and Main Hurdman

acted negligently and that both TCB and InterFirst violated the DTPA. The only claims asserted against the director defendants were fraud claims.

(2) No. A–32,372 (Eagle Properties, Ltd., suit) v. Mays, whereby the same fraud allegations were made against the director defendants but added a cause of action for negligent mismanagement and alleged DTPA violations.

Summary judgments were filed in both suits by all Appellees. The trial court held that res judicata and collateral estoppel barred the actions of Appellants and, in addition, as to TCB, InterFirst and Main Hurdman, the statute of limitations also barred Appellants' action. The director defendants had not relied on a statute of limitations bar. Eagle Properties, Ltd., and its two general partners, Brown and Branum, appeal. The two lawsuits were consolidated for purposes of this appeal.

Point of Error No. One of Eagle, Branum and Brown asserts the trial court erred in granting summary judgment for Appellees on the basis of res judicata.

■ After a suit in federal court, when the defense of res judicata is later asserted in a state court proceedings, our Texas Supreme Court has held that the federal law of res judicata is to be applied. *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985). We see no reason why federal law should not also apply to collateral estoppel and do hold that it is also controlled by federal law.

■ The Appellants contend that res judicata is not applicable because the present lawsuit does not present the same claims as the federal action. The United States Court of Appeals for the Fifth Circuit has recognized that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action. *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975); *Kemp v. Birmingham News Co.*,

608 F.2d 1049, 1052 (5th Cir.1979). The Appellants, in their counterclaim in federal court, sought damages and also sought to avoid payment of the $25 million in notes because of fraud perpetrated on them in the sale/leaseback of FNBM properties. The present state court suit seeks damages because of claimed fraud in the sale/leaseback of the FNBM properties. Appellants' complaint in the federal action and this state court action arises out of the same transaction. Restatement (Second) of Judgments sec. 24 comment c (1982), states:

Transaction may be single despite different harms, substantive theories, measures or kinds of relief.... That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

Therefore, even though the present state court suit may have causes of action not pled in the federal suit, it does not deprive the judgment entered in the federal court suit from barring Appellants' causes of action in the instant case on the basis of res judicata. *Ocean Drilling and Exploration Company, Inc. v. Mont Boat Rental Services, Inc.*, 799 F.2d 213, 217 (5th Cir. 1986).

■ When Appellants assert that the state action contains causes of action not presented in the federal lawsuit, we then must decide: (1) Whether the federal court possessed jurisdiction over the omitted state claim, and if so, then (2) whether the federal court would clearly have declined the exercise of that jurisdiction as a matter of discretion. *Jeanes*, 688 S.W.2d at 104. Restatement (Second) of Judgments sec. 25 comment e (1982). The federal court had jurisdiction over the state court causes of action by virtue of the doctrine of pendent

claim jurisdiction and or pendent party jurisdiction. Further, it has not been shown that the federal court would have clearly declined the exercise of that jurisdiction. *Jeanes,* 668 S.W.2d at 104.

■ Appellants contend that res judicata cannot be applicable because of non-mutuality of the parties (or their privies). We lack direct authority regarding the effect of the legal relationship between FDIC and director defendants of the failed FNBM insofar as privity is concerned. But under the Texas Supreme Court's analysis in the *Jeanes* case an examination of the relationship between the parties involved in the initial litigation (FDIC) and the non-party who seeks to take advantage of res judicata (Appellee director defendants) and any "special reasons" for denying benefits of res judicata to the Appellee director defendants, we find that this is a case where res judicata should be applied. *Jeanes,* 688 S.W.2d at 103. While the relationship between the FDIC and the Appellee director defendants is not of a traditional type as those listed in *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), nor the type found sufficient in *Jeanes v. Henderson,* at 105, we find that the interests of the Appellee director defendants were closely aligned and were so adequately represented by FDIC in the federal suit as to satisfy the traditional "privity" standard. *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir.1987). Initially, FDIC became FNBM's successor in interest under a federal statute, 12 U.S.C.A. sec. 1811, et seq. (West 1980 & Supp.1988). As such, the FDIC had an interest that was on par with that of FNBM in protecting the bank's assets. Also, in the federal lawsuit, the issue of whether or not FNBM through its officers and directors had fraudulently induced the Appellants into entering into the sale/leaseback of the bank properties was strongly contested which is the identical basis of the Appellant's suit before us. Appellant had the opportunity and the strong incentive to litigate the fraud issues fully and in successfully defending itself, the FDIC adequately represented the Appellee director defendants' interests. The federal judge based his decision for FDIC on the fraud questions and not on the fact that FDIC could recover regardless of fraud because it was a holder in due course. *FDIC,* 644 F.Supp. at 1038–48.

However, privity has not always been required for the application of res judicata. *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.), cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), and other authorities have agreed, "[o]nce it is concluded that preclusion is asserted against a third person who properly may be bound by the judgment, the inquiry shifts to ask whether there is some special reason for denying its benefits to a nonparty." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure sec. 4448, at 410 (1981). The federal finding that there was no actionable fraud and no fraudulent inducement of early funding of the letters of credit should and does warrant the applicability of res judicata to all Appellees. We find no special reason for denying its applicability to the Appellees.

■ Appellants further claim that when they settled the federal case while on appeal to the United States Court of Appeals for the Fifth Circuit, the parties stipulated that the settlement was not to effect claims that Appellants might have "against the officers, directors, agents or employees of the former FNBM, or its attorneys or accountants or Texas Commerce Bank, N.A." The appeal was dismissed and therefore Appellants contend res judicata cannot be asserted. We disagree because the federal district court's judgment was not set aside as a result of the settlement agreement and, therefore, remained a final judgment for which a bar of res judicata could properly be urged.

We sustain trial court's finding that res judicata applied to Appellants' claims against all Appellees.

Point of Error No. One of Eagle, Branum and Brown that asserts the trial court erred in granting summary judgment for Appellees on the basis of res judicata is overruled.

Point of Error No. Two of Eagle, Branum and Brown asserts the trial court erred in granting summary judgment for Appellees on the basis of collateral estoppel.

■ Appellants contend collateral estoppel does not apply since that fact issue decided in the federal suit does not preclude the other claims asserted by Appellants in this state court suit. They also contend that the finding in the federal suit, in regard to the fraud contentions, was an alternative holding and not necessary to the outcome of that suit; therefore, it would be grossly unfair to give preclusive effect to the prior judgment. They also assert that the settlement of the federal suit, while on appeal, precludes the application of collateral estoppel.

A judgment on the merits in a prior suit precludes the relitigation, in a second unrelated cause of action, of the issues actually litigated and necessary to the outcome of the first action. *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552, 559 n. 5 (1979). But collateral estoppel has been differently applied depending on whether the doctrine is used offensively or defensively.

Non-mutual collateral estoppel can be in the form of offensive or defensive collateral estoppel:

(1) Offensive collateral estoppel cannot be used by a plaintiff against a defendant in an action brought by a different defendant.

(2) Defensive collateral estoppel occurs when a defendant answers a plaintiff's suit with a plea of collateral estoppel based upon a finding against a defendant brought by a different plaintiff.

Generally, the plaintiff is using the offensive collateral estoppel to ESTABLISH an element of his claims, while the defensive use of collateral estoppel will generally NEGATE some aspect of a plaintiff's claim. Comment, The Future of Offensive Collateral Estoppel in Texas, 35 Baylor L.Rev. 291 (1983).

Appellees contend that the Appellants' fraud counterclaim in the federal suit was decided adversely to Appellants, yet they are again asserting fraud in this suit, therefore, defensive collateral estoppel applies to bar such action. *Parklane Hosiery,* 439 U.S. at 326, n. 4, 99 S.Ct. at 649 n. 4, 58 L.Ed.2d at 559 n. 4. In the case before us, the Appellants have asserted against the Appellees common law fraud, statutory fraud and DPTA violations. The Appellants' counterclaim in federal court constituted fraud accusations. The federal court judgment found:

(1) The acts by the bank directors which induced the Eagle investors to purchase the bank properties did not amount to actionable fraud, *FDIC,* 664 F.Supp. at 1038–45.

(2) The bank directors did not fraudulently induce Eagle investors to agree to the early funding of the letters of credit. *FDIC,* 664 F.Supp. at 1048.

In the federal suit, there was also a finding on issues which preclude the Appellants' statutory fraud claims. The federal court found that representations by Charles Fraser of FNBM, in regard to the fact that the sale/leaseback transaction would improve the bank's financial condition and result in the bank showing a profit for 1982, plus the favorable tax consequence for the Appellants, were merely statements of opinion, and therefore, not actionable fraud. *FDIC,* 664 F.Supp. at 1042. In addition, though it was found that Charles Fraser's representations that an appraisal of the properties had been made which justified the $75 million asking price was false and material. The court did not find that such representations were relied upon by the Eagle investors. *FDIC,* 664 F.Supp. at 1042; *Barrier v. Brinkmann,* 130 Tex. 350, 357–60, 109 S.W.2d

462, 466–67 (1937); *Crofford v. Bowden,* 311 S.W.2d 954, 956–57 (Tex.Civ.App.—Fort Worth 1958, writ ref'd). However, while collateral estoppel bars recovery on the issues of common law fraud and statutory fraud because of the federal court findings, we must determine whether or not Appellants' DTPA cause of action is also barred by collateral estoppel. We again look to the federal findings to determine what matters were litigated and decided. The federal court found the following: (1) A fiduciary relationship did not exist between Charles Fraser and the bank and the Eagle partners; (2) Appellants were "knowledgable, capable and sophisticated businessmen;" (3) Appellants did not condition their participation in the limited partnership on being able to see and review the appraisal (referring to the bank appraisal that FNBM's president said the bank had); (4) neither the FNBM's president nor the FNBM fraudulently induced the Appellants to enter into the sale/leaseback transaction; (5) the Eagle partners (Appellants) were not fraudulently induced into the transaction; (6) "the First National Bank did not fraudulently induce Eagle to agree to the early funding of the letters of credit."

DPTA violations were not specifically pled in the counterclaim in the federal court suit, but the basis of such DTPA violations did involve the same conduct that was litigated in federal court. 1 B.J. Moore, J. Lucas & T. Currier, Moore's Federal Practice sec. 0.443 [2] at 760–61 (1988), states:

> A new contention is not, however, necessarily a new issue. If a new legal theory or factual assertion put forward in the second action is 'related to the subject matter and relevant to the issues' that were litigated and adjudicated previously, 'so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.'

The DTPA claim in state court is relying on the same factual matters litigated and decided in the federal court case where the court concluded that the Eagle partners were not fraudulently induced into the sale/leaseback transaction and also that they were not fraudulently induced to agree to the early funding of the letters of credit. *Hardy v. Fleming,* 553 S.W.2d 790 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.); *Benson v. Wanda Petroleum Company,* 468 S.W.2d 361 (Tex.1971). We, therefore, find that the contentions alleged under the DTPA against Appellees were barred by collateral estoppel.

Appellants also assert that the findings made by the federal judge were alternative holdings preventing the application of collateral estoppel. We interpret Judge Bunton's opinion in the federal suit to be that he found no actionable fraud and then went on to say that regardless of that fact, if he had found fraud, he would still have found for FDIC due to lack of actual knowledge sufficient to impute fraud to FDIC. *FDIC,* 664 F.Supp. at 1045. *Hick v. Quaker Oats Co.,* 662 F.2d 1158 (5th Cir.1981), relied upon by Appellants is distinguishable since it involved the attempted use of collateral estoppel offensively.

■ Appellants contend that the appraised value of the building was unavailable to them at the time of the federal suit; therefore, they were denied a "full and fair opportunity" to litigate the fraud issue. We disagree. The evidence of a lower appraisal was available during the federal trial with the use of due diligence since the Appellants knew that an appraisal firm had been retained and no effort was made to discover what that appraisal was. Since we are dealing with the defensive use of collateral estoppel, we find that the general rules regarding a new trial due to newly discovered evidence and the use of due diligence should be applicable. Fed.R.Civ. P. 60(b)(2); *Johnson Waste Materials v. Marshall,* 611 F.2d 593, 597–98 (5th Cir. 1980).

Appellants again urge that the settlement agreement entered into, while the federal suit was on appeal, prevents the

application of collateral estoppel. As we have previously stated under the res judicata discussion, the federal trial court's judgment was not set aside pursuant to the settlement agreement; therefore, Appellants are bound by those findings by the federal judge in that case.

Point of Error No. Two of Eagle, Branum and Brown that asserts that the trial court erred in barring their action as to Appellees on the basis of collateral estoppel is overruled.

■ Point of Error No. Three of Eagle, Branum and Brown asserts the trial court erred in granting summary judgment by finding that the Appellants' cause of action against TCB, InterFirst and Main Hurdman was barred by limitations.

The two-year statute of limitations is applicable to Appellants' causes of action for fraud, negligence and violations of the DTPA. There was an abundance of evidence that Appellants knew or should have known about the unhealthy and disasterous financial shape that the FNBM was in and should have, in the exercise of reasonable diligence, discovered any fraud.

Therefore, the record before the trial court as to the causes of action pled and the evidence presented indicated that Appellees, TCB, InterFirst and Main Hurdman were entitled to the summary judgment granted on the basis of limitations. Tex. Bus. & Com.Code Ann. sec. 17.565 (Vernon 1987); Tex.Civ.Prac. & Rem.Code Ann. sec. 16.003 (Vernon Supp.1988); *First National Bank of Eagle Pass v. Levine,* 721 S.W.2d 287 (Tex.1986); *Willis v. Maverick,* 760 S.W.2d 642 (1988).

Point of Error No. Three of Eagle, Branum and Brown is overruled.

Point of Error No. Four of Eagle and Branum asserts the trial court erred in granting summary judgment as to Appellants, Eagle and Branum's negligence cause of action because of lack of standing.

■ Appellants, Eagle and Branum, claim that the Appellee defendant directors were negligent in their duties as directors of FNBM and therefore breached a fiduciary duty to Appellants. We find that such contentions by these Appellants are precluded by res judicata and collateral estoppel since, in the federal suit, the Court found that a fiduciary relationship did not exist between the parties. *FDIC,* 664 F.Supp. at 1043–44. Negligent acts or breach of fiduciary duty by a corporate director is a cause of action which may be asserted only on behalf of the corporation. *Sutton v. Reagan & Gee,* 405 S.W.2d 828, 834–35 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). As a matter of law, the Appellants lack standing to sue privately for the alleged harm to the corporation.

Point of Error No. Four of Eagle and Branum is overruled. To conclude, we restate our holdings as follows:

(1) Summary judgment was proper on the basis of res judicata as to all Appellees.

(2) Summary judgment was proper based on collateral estoppel as to all Appellees.

(3) Summary judgment was proper based on lack of standing as to the negligence cause of action pertaining to the Appellee director defendants.

(4) Summary judgment was proper based on the bar by limitations as to Appellants' cause of action against TCB, InterFirst and Main Hurdman.

For the reasons stated above, judgment for all Appellees is affirmed.