KONDOS ENTERTAINMENT, INC.
and Jay Snyder, Appellants,

v.

QUINNEY ELECTRIC, INC., Appellee.

No. 04–96–00251–CV.

Court of Appeals of Texas,
San Antonio.

April 30, 1997.

Rehearing Overruled May 30, 1997.

H. L. Buddy Socks, McCamish, Deely & Rapp, P.C., San Antonio, Lisa K. Vaughn, Haynes and Boone, L.L.P., San Antonio, for Appellants.

R. M. Janssen, San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

This is a breach of contract case. Quinney Electric, Inc. (Quinney) sued Kondos Entertainment, Inc. (Kondos), V–Ball, Inc. (V–Ball), and Jay Snyder (Snyder) for non-payment of fees associated with electrical services Quinney performed under a contract with the defendants in connection with the construction of a nightclub. V–Ball filed bankruptcy and was severed from the suit. Quinney proceeded to trial against Kondos and Snyder. The case was tried to the court, which found in favor of Quinney. The trial court entered judgment against Kondos and Snyder. We reverse and render.

## FACTS

Quinney was retained to do electrical work for the construction of a nightclub in San Antonio, Texas currently called the Tejano Rodeo. The letter agreement covering the work to be performed was executed by a representative of Kondos. Snyder was the contact person at Kondos, with whom Quinney dealt on a regular basis regarding the project. Snyder told Quinney that he was a partner in the project and that he owned a part of the business. Quinney submitted invoices for the work it performed to Kondos. The checks Quinney received in payment of the invoices were issued from an account in the name of V–Ball, Inc. and were signed by Snyder.

During the project, Snyder approached Quinney and requested that Quinney place a number of items on its account with General Electric because there was no time for Kondos to get an account with General Electric. Snyder assured Quinney that Kondos would pay the account directly, which it never did.

822

Shortly thereafter, Quinney stopped receiving checks for the work it performed. Quinney ultimately filed suit against Kondos, V–Ball, and Snyder seeking damages for the unpaid invoices, plus interest and attorney's fees.

Approximately four months after suit was filed, V–Ball filed bankruptcy. Quinney filed a proof of claim for $83,991.32 with the bankruptcy court. Quinney attached copies of the contract with Kondos and the invoices submitted to Kondos. V–Ball filed an objection to Quinney's proof of claim asserting that deficiencies in Quinney's work forced V–Ball to hire another electrical contractor to finish the job. V–Ball also contended that Quinney's proof of claim had not been fully substantiated by invoices. The bankruptcy court ultimately entered an order allowing Quinney's claim as a general unsecured claim in the amount of $83,724.76 and ordering payment of the claim. Quinney received checks in full payment of its allowed claim against V–Ball.

Quinney pursued its claim in state court against Kondos and Snyder. The trial court ultimately entered a judgment in favor of Quinney, awarding Quinney $83,991.21 in actual damages, $18,839.13 in prejudgment interest, $20,000 in attorney's fees, and $978 in court costs. Post-judgment interest on the foregoing sums was also awarded. The court further ordered that the $83,724.76 previously paid to Quinney in connection with the V–Ball bankruptcy be credited to the amount of the judgment. In the end, Kondos and Snyder were left with a judgment against them in the unsatisfied amount of $40,083.58, plus post-judgment interest, which represented primarily the prejudgment interest, attorney's fees, and court costs not included in the amount paid in connection with the bankruptcy.

Kondos and Snyder appeal the judgment of the trial court claiming in six points of error that Quinney's claims are barred by the doctrines of election of remedies, res judicata, and collateral estoppel, and that the trial court erred by (1) finding that an agency relationship existed between Kondos and Snyder and V–Ball, (2) failing to grant a new trial because the evidence is insufficient to support a finding of a single business enterprise or partnership, (3) finding a single business enterprise or partnership when V–Ball did not participate at trial, and (4) failing to grant a new trial because Quinney failed to mitigate damages. We will address the legal sufficiency of the evidence because it is relevant to our discussion of the appellants' collateral estoppel claim, upon which we base our reversal of this case. Because the collateral estoppel point is dispositive, we do not reach the remaining points of error asserted by Kondos and Snyder.

## SUFFICIENCY OF EVIDENCE

Kondos and Snyder claim in their fourth point of error that the trial court erred in failing to grant a new trial or judgment in their favor because the evidence was insufficient to support a finding that they were involved in a partnership or single business enterprise with V–Ball. Because our reading of the court's findings of fact and conclusions of law indicates that the court concluded only that a partnership-by-estoppel relationship existed between Kondos, Snyder, and V–Ball, we review the sufficiency of the evidence to support only that conclusion and do not address the sufficiency of the evidence as to whether Kondos and V–Ball constituted a single business enterprise.

We review challenges to the sufficiency of the evidence in a bench trial under the same standard used in reviewing the sufficiency of the evidence in a jury trial. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). In considering a "no evidence" or legal insufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

Viewing the evidence in the light most favorable to the decision of the trier of

fact, we find that the evidence was legally sufficient to support the trial court's conclusion that Kondos, Snyder, and V–Ball were partners by estoppel. The trial court found that because Kondos and V–Ball did not maintain sufficient independence from each other, the two corporations were estopped from denying that they were partners. The court also found that because Snyder held himself out to be a partner with the two corporations, he was estopped from denying that such a partnership existed. First, with regard to the two corporations, the evidence is sufficient to support a finding that Kondos and V–Ball were estopped from denying that they were partners. To find a partnership by estoppel, two elements must be met: (1) there must be a representation that the one sought to be bound is a member of a partnership; and (2) the one to whom the representation is made must rely on the representation by giving credit to the partnership. *Paramount Petroleum v. Taylor Rental Ctr.*, 712 S.W.2d 534, 537 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Both elements are met in this case. Kondos and V–Ball represented themselves as partners by contracting with Quinney in the name of Kondos and paying Quinney with checks from V–Ball's account. Kondos further represented that it was a partner by providing office space to V–Ball, free of charge, and providing clerical staff to V–Ball, free of charge. Both corporations had the same president and treasurer, the same majority shareholders, the same registered agent, the same incorporator, shared the same address, and had common employees. Kondos paid bills for V–Ball out of its own account. Both corporations filed assumed-name applications under the name Tejano Rodeo. Kondos made over $500,000 in unsecured loans to V–Ball, and the persons who signed the notes for these loans were officers in the corresponding corporation. Quinney relied on these representations of the relationship between Kondos and V–Ball. Accordingly, the evidence was sufficient to support the court's finding that Kondos and V–Ball were partners by estoppel.

We find the evidence equally sufficient to support the trial court's finding that Snyder is estopped from denying his partnership with Kondos and V–Ball. Snyder held himself out to be a partner in his dealings with Quinney. He signed the checks submitted to Quinney as payment for work performed. Further, he expressly represented to Quinney that he was a partner and investor in the project, and that he owned a piece of the business. Quinney relied on Snyder's representations in placing materials on its credit based on Snyder's assurance that the account would be paid directly by the business. The Texas Legislature has provided that "[w]hen a person, by words spoken or written or by conduct, represents himself . . . as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership." Tex.Rev.Civ. Stat. Ann. art. 6132b § 16 (Vernon 1977). Snyder's actions meet this criteria, and the evidence supports a finding that he is estopped from denying that he was a partner in the business.

The fourth point of error asserted by Kondos and Snyder is overruled.

## COLLATERAL ESTOPPEL

In their second point of error, Kondos and Snyder claim that because the specific issues central to Quinney's claims were previously adjudicated in bankruptcy court, Quinney should have been collaterally estopped from relitigating those issues in the state court suit.[1] When the defense of collateral estoppel is asserted in a state court proceeding after a related federal proceeding is concluded, the federal law of collateral estoppel should be applied. *Shell Pipeline Corp. v. Coastal States Trading, Inc.*, 788 S.W.2d 837, 842–43 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Eagle Properties, Ltd. v. Scharbauer*, 758 S.W.2d 911, 915 (Tex.App.—El Paso 1988), *aff'd in part rev'd*

---

1. Kondos and Snyder also claim in their second point of error that Quinney's claims are barred by the doctrine of res judicata. We do not reach the res judicata claim, however, as we find that Quinney's claims are barred by collateral estoppel.

824

*in part on other grounds,* 807 S.W.2d 714 (Tex.1990). Federal law provides that three elements must be met for the doctrine of collateral estoppel to apply to a subsequent, related state court proceeding: (1) the prior federal decision must have resulted in a final judgment on the merits; (2) the fact issues sought to be litigated in the second action must have been "actually litigated" in federal court; and (3) the disposition of those issues must have been "necessary to the outcome" of the prior federal litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

■ Initially, we note that Kondos and Snyder may assert the defense of collateral estoppel even though they were not parties to the bankruptcy proceeding. The defense does not require mutuality for the invocation of collateral estoppel; rather, it is only necessary that the party *against whom* collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *see also Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990). Quinney is the party against whom collateral estoppel is being asserted in this case, and Quinney was both the claimant in the bankruptcy proceeding and the plaintiff in the state court action.

■ Turning to the merits of this defense, Kondos and Snyder allege that all elements of collateral estoppel are met in this case. We agree. The first element is met because the bankruptcy court's decision regarding Quinney's claim resulted in a final judgment on the merits. The order entered by the bankruptcy court was entitled "Order Regarding Claim No. 16 Filed By Quinney Electric, Inc." This order allowed Quinney's claim as a general unsecured claim and ordered the claim paid. The bankruptcy court clearly had jurisdiction to enter such an order, and the order was a final judgment on the merits of Quinney's claim.

The second element of collateral estoppel is met as well because the fact issues Quinney sought to relitigate in state court were "actually litigated" in bankruptcy court. It is clear that the issues involved in the state court proceeding were the same issues Quinney litigated in bankruptcy court. In both proceedings, Quinney claimed that it had not been paid the fees agreed upon for the electrical services rendered pursuant to its contract with Kondos. The same letter agreement and invoices were attached as exhibits to Quinney's petitions in state court and its proof of claim in bankruptcy court. Clearly, the contract at issue in this state court litigation is the very agreement that formed the basis of Quinney's claim in bankruptcy court. The issues in both proceedings were simply the validity and amount of Quinney's claim under its contract with Kondos. Further, although the bankruptcy court determined V–Ball's liability for the debt to Quinney, because Kondos, Snyder, and V–Ball were partners by estoppel, they were jointly and severally liable for the debt. Thus, a determination as to V–Ball's liability equates to a determination of the liability of Kondos and Snyder, its partners. Collateral estoppel is applicable when a plaintiff seeks to relitigate in a second suit an issue upon which it prevailed in the initial suit against one having joint and several liability for the wrong. *See El Paso Natural Gas Co. v. Berryman,* 858 S.W.2d 362, 364 (Tex.1993).

■ Fact issues are "actually litigated" when they are properly raised by the pleadings, submitted for determination, and actually determined. *Gober v. Terra + Corp.,* 100 F.3d 1195, 1203 (5th Cir.1996). In this case, Quinney raised the breach of contract issue in its proof of claim filed with the bankruptcy court, the issues of whether Quinney's claim was valid and the amount of the claim were submitted to the bankruptcy court for determination, and the bankruptcy court determined that Quinney's claim was valid and should be paid in the amount of $83,724.76. We recognize that the standard process involved in determining whether to allow a creditor's claim would not normally meet the "actually litigated" requirement under collateral estoppel because normally a proof of claim is *prima facie* evidence of the claim's validity and amount and nothing is litigated. *See* 11 U.S.C. § 502(a) (1997). However, when a party in interest files an objection to the proof of claim, the claim

becomes a contested matter to be decided by the bankruptcy court "after notice and a hearing." *See id.* § 502(b). The debtor in this case, V–Ball, who was clearly a party in interest, filed an objection to Quinney's claim asserting that deficiencies in Quinney's work forced V–Ball to hire another electrical contractor to finish the job and contending that Quinney's proof of claim had not been fully substantiated by invoices. Once V–Ball filed this objection, Quinney's claim became a contested matter, which was "actually litigated" and ultimately decided by the bankruptcy court. This result obtains even though the order was apparently an agreed order because collateral estoppel applies when a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits even if he subsequently chooses not to do so. *See In re Bush,* 62 F.3d 1319, 1324 (11th Cir.1995); *see also In re Garner,* 56 F.3d 677, 680 (5th Cir.1995) (holding that even post-answer default judgment has preclusive effect under doctrine of collateral estoppel because party had opportunity to participate, but chose not to do so).

Having determined that the validity and amount of Quinney's claim were issues actually litigated, we need only consider whether a determination of these issues was "necessary to the outcome" of the bankruptcy court's order. We conclude that it was, satisfying the third element of the collateral estoppel test, because the validity and amount of Quinney's claim were not only issues necessary for the bankruptcy court to determine in entering its order on the claim, they were the *only* issues the bankruptcy court considered. All elements of collateral estoppel are met and Quinney was collaterally estopped from relitigating the breach of contract issue decided by the bankruptcy court as to V–Ball in a subsequent state court action against Kondos and Snyder.

We recognize that the result we reach today may seen unjust because there was no double recovery in this case—in the end, Quinney received only the total amount of his claim, albeit from two different sources in two different courts. However, the policies behind the doctrine of collateral estoppel

support our decision. As our Texas Supreme Court has noted, the doctrine of collateral estoppel reflects the need to bring all litigation to an end and is designed to protect parties from multiple lawsuits, promote judicial efficiency, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Services, Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994); *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971). The litigation regarding liability for the debt owed to Quinney should have come to an end when the bankruptcy court entered its order allowing and ordering payment of Quinney's claim. Further litigation regarding this issue in the state court action subjected the parties to multiple lawsuits and opened the door for a judgment inconsistent with that of the bankruptcy court. Our decision respects the finality of the bankruptcy court's order and promotes judicial efficiency. The second point of error asserted by Kondos and Snyder is sustained.

We reverse the judgment of the trial court on collateral estoppel grounds and render judgment that Quinney take nothing in this state court proceeding.

DUNCAN, Justice, dissenting.

In my view, Kondos and Synder's failure to request additional findings of fact relative to their affirmative defenses of collateral estoppel and res judicata waived those defenses, and the judgment cannot be reversed on the basis of either. I therefore respectfully dissent.

### SUMMARY OF RELEVANT FACTS

The trial court included its findings and conclusions in its final judgment, contrary to Rule 299a.[1] These findings do not include findings on any element of Kondos' and Snyder's affirmative defenses of collateral estoppel and res judicata. Thereafter, Kondos and Snyder filed a request for findings of fact and conclusions of law, but they failed to point out to the trial court that it had not made findings relative to these affirmative

---

1. Unless otherwise noted, all rule references are to the Texas Rules of Civil Procedure.

defenses, whether in their initial request, a request for additional findings under Rule 298, or otherwise. On appeal, however, Kondos and Snyder seek to reverse the trial court's judgment on the basis of their affirmative defenses, and the majority does so on their collateral estoppel defense.

## DISCUSSION

When the trial court makes findings of fact and conclusions of law that "do not establish any element of [an affirmative defense], the party relying upon that defense must file a request for additional findings such as to avoid waiver of that defense on appeal." *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 907 (Tex.App.—Houston [14th Dist.] 1991, writ denied), *cited in Levine v. Maverick County Water Control & Improvement Dist.*, 884 S.W.2d 790, 796 (Tex.App.—San Antonio 1994, writ denied).

In this case, it is indisputable that the trial court's findings of fact do not include any element of Kondos' and Snyder's collateral estoppel and res judicata affirmative defenses. The issue, therefore, is whether the trial court's findings, contained as they are in the judgment, are effective and thus shift the burden to Kondos and Snyder to request additional findings under Rule 298 or are nullities so that Kondos' and Snyder's request for findings and conclusions is sufficient. In light of its judgment, the majority effectively holds in this case that findings included in a judgment are nullities; therefore, the burden did not shift to Kondos and Snyder to request additional findings on their affirmative defenses. It is on this point that I disagree.

Before the adoption of Rule 299a in 1990, this court held that, "although it a preferable practice to state [findings and conclusions] separately, it is not required." *Longoria v. Greyhound Lines, Inc.*, 699 S.W.2d 298, 304–05 (Tex.App.—San Antonio 1985, no writ); *see also, e.g., Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 298 (Tex.App.—El Paso 1991, no writ) (citing supporting authority from Third, Fifth, and Twelfth Courts of Appeals); *see generally* Ann Crawford McClure, *Non–Jury Appeals Revisited, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM,

ADVANCED APPELLATE PRACTICE COURSE V, V–21 (1996) (also noting contrary authority from the First and Thirteenth Courts of Appeals); *cf. Black v. Dallas County Child Welfare Unit*, 835 S.W.2d 626, 630 (Tex.1992) (in a different context, the supreme court stated that "[a]ppellate courts must give effect to the intended findings of the trial court if supported by the evidence, the record, and judgment").

In 1990, however, the supreme court adopted Rule 299a, which provides:

> Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.

Since the adoption of Rule 299a, this court has not addressed the interplay between Rule 299a and *Longoria.* However, the majority apparently has determined (albeit *sub silentio* ) that Rule 299a overrules *Longoria.* I, on the other hand, believe the two are consistent and complementary for two reasons. First, construing Rule 299a to recognize and give effect to findings contained in a judgment absent a conflict implements the anti-sandbagging policy underlying all preservation requirements and specifically Rule 52(a), TEX.R.APP. P., which requires a party to make his complaint known to the trial court and obtain a ruling on that complaint. Second, this interpretation is consistent with the "legislative history" surrounding Rule 299a. *See, e.g., R.K., M.D. v. Ramirez*, 887 S.W.2d 836, 841 n. 6 (Tex.1994) (using minutes of the Supreme Court Advisory Committee as aid in interpreting rule of evidence).

Rule 299a was initially drafted by the subcommittee with one and only one purpose in mind—to resolve conflicts between findings recited in a judgment and findings that are separately filed pursuant to Rules 297 and 298. *See* Minutes, Supreme Court Advisory Committee 170–217 (July 15, 1989). However, during the discussion of the subcommit-

tee's proposal, the chairman stated "I think if the findings of fact are in the judgment and nobody complains, that they're going to control on appeal. [They are] not going to be nullities." *Id.* at 201. One member suggested otherwise, however, and the chairman reiterated "[t]hey're not going to be ignored on appeal." *Id.* Another member chimed in— effectively identifying the problem raised— that the rule was to be operative "only when there's a conflict." *Id.* at 202. The chairman agreed but stated that the proposed rule, as then drafted, rendered findings in a judgment nullities. *Id.* To clarify that the rule was to operate only in the event of a conflict, the chairman proposed what was ultimately adopted as the first two sentences of Rule 299a. *See id.* at 202–17.

## CONCLUSION

To construe Rule 299a to render findings in a judgment nugatory in the absence of a conflict, as the majority does in this case, is contrary to the purpose of the rule, contrary to the intended effect of the rule, and contrary to Rule 52(a), TEX.R.APP. P. For this reason, I respectfully dissent from the majority's judgment reversing the trial court's judgment and rendering judgment on a complaint that was never made known to either the trial court or opposing counsel.